UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAVID S. JONES,

                Plaintiff,                          MEMORANDUM
                                                          AND ORDER
   -against-                                    16 CV 2194 (RML)

TREVOR TAHIEM SMITH, JR.,
*a/k/a* Busta Rhymes, *a/k/a* Trevor George Smith, Jr.,
and STARBUS LLC,

                Defendants.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

This case raises the important question of whether defendants, solely due to their notoriety or celebrity, may enter into confidential settlements of claims against them made under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. It is, in other words, about whether parties may assert a "celebrity exception" to the general rules that FLSA settlements must be filed publicly, and that confidentiality provisions in those agreements are impermissible. Because I find that such an exception has no basis in law, and would contravene the public policies undergirding the FLSA, I find that the parties' joint motion for settlement approval must be denied.

## BACKGROUND

Plaintiff David S. Jones ("plaintiff") brought this action against defendants Trevor Tahiem Smith, Jr. and Starbus LLC ("defendants") on May 3, 2016. (*See* Complaint, dated May 3, 2016 ("Compl."), Dkt. No. 1.) Plaintiff alleged that, while employed by defendants as defendant Smith's personal chauffeur, defendants illegally failed to pay him required overtime compensation and subjected him to verbal harassment and discrimination based on his age. (*See* Compl. ¶¶ 19–53, 61–64). Plaintiff further alleged that on the day his employment was terminated, defendant Smith physically assaulted him. (*See* id. ¶¶ 65–75.) He asserted five causes of action for: (1) unpaid overtime under the FLSA; (2) unpaid wages under the New York

Labor Law ("NYLL"); (3) damages for age discrimination under the New York City Human Rights Law ("NYCHRL"); (4) damages for assault; and (5) damages for battery. (Id. ¶¶ 78–111.)  Defendants answered on August 15, 2016, denying all of plaintiff's allegations. (See Answer to Complaint, dated Aug. 15, 2016, Dkt. No. 14.)  The parties conducted nearly a year of discovery and settlement negotiations before arriving at a settlement in principle in November 2017.  (See Motion for Extension of Time to File, dated Nov. 2, 2017, Dkt. No. 27.)  The Honorable Pamela K. Chen, United States District Judge, subsequently directed the parties to file a motion for settlement approval. (Order, dated Nov. 6, 2017.)

The parties then filed a letter seeking the court's guidance on how to submit their agreement for approval.  In the letter, defendants' counsel insisted that the settlement could not be filed publicly, advancing two lines of argument to support this contention. (See Joint Letter, dated Dec. 11, 2017 ("Joint Ltr."), Dkt. No. 29, at 1–2.)  First, the parties stated that because four out of the five claims were non-FLSA claims that did not require judicial approval, "the rationale that 'the public has an independent interest in assuring that employees [sic] wages are fair and thus do not endanger the national health and well-being' is inapplicable to Plaintiff's claim."[1] (Joint Ltr. at 1–2.)  Second, the parties stated that the settlement agreement itself contained a confidentiality provision because defendant was "both a public figure (a well-known recording artist) and private individual" and that requiring him to submit the agreement via ECF "would make it publicly available in contravention of the confidentiality provision." (Id. at 2.)  They concluded by asking for "the Court's guidance on how to submit [the agreement] for approval."

---

[1] The parties also claimed that the agreement's confidentiality provision was limited to the state and city claims and "explicitly carves out Plaintiff's FLSA claim." (Joint Ltr. at 2.)  Because the agreement submitted to my chambers contained no such carve-out, however, I have not addressed the issue of whether it would be possible to construct such an agreement that could pass scrutiny under Cheeks.

(Id.) Shortly thereafter, the parties consented to magistrate judge jurisdiction. (See Consent to Jurisdiction by U.S. Magistrate Judge, dated Dec. 13, 2017, Dkt. No. 31.)

I held a telephone conference with the parties on April 5, 2018 to discuss these issues. During the conference, the parties suggested an alternative rationale for avoiding Cheeks review and public disclosure of the settlement. They offered that if they were to stipulate to the plaintiff being deemed an independent contractor for settlement purposes only they could avoid the need for court approval. While I was skeptical of this argument, I instructed the parties to submit an executed version of the settlement agreement to chambers for my review. (Minute Entry, dated Apr. 5, 2018.) Counsel submitted an executed copy of the parties' proposed settlement agreement to my chambers on May 1, 2018.

## DISCUSSION

**1. Avoiding Cheeks Review**

The Second Circuit held in Cheeks that court approval is required for all stipulated dismissals of FLSA actions with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Cheeks v. Freeport Pancake House, 796 F.3d 199, 206 (2d Cir. 2015). Since then, wage and hour litigators have employed several approaches in attempting to avoid judicial review of their settlement agreements.[2] As far as I can tell, however, the parties' argument that stipulating to plaintiff's independent contractor status allows them to avoid all of the constraints

---

[2] See, e.g., Gallardo v. PS Chicken Inc., 285 F. Supp. 3d 549, 551–53 (E.D.N.Y. 2017) (discussing whether parties may agree to "bifurcated" settlements of FLSA and non-FLSA claims to avoid Cheeks review); Yu v. Hasaki Rest., 319 F.R.D. 111 (S.D.N.Y. 2017) (rejecting effort to use Rule 68 settlements to avoid Cheeks review but acknowledging split among district courts as to this approach), appeal granted, 874 F.3d 94 (2d Cir. 2017); Carson v. Team Brown Consulting, Inc., No. 16 CV 4206, 2017 WL 4357393, at *4 (E.D.N.Y. Sept. 29, 2017) (finding that while it is unsettled whether voluntary dismissals without prejudice in FLSA actions may be granted without judicial review, litigants should not use them as a mechanism to effect an end-run around the policy concerns articulated in Cheeks).

attendant with Cheeks review is a novel one.  The parties here do not elaborate their argument at any length or cite any precedents in support of their position.

Plaintiffs seem to be relying on the idea that the FLSA is inapplicable to independent contractors.  See, e.g. Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015) ("the FLSA's overtime provision applies only to 'employees' and not independent contractors . . . .") (internal citation omitted).  Their contention is that if they stipulate to independent contractor status for the purpose of the settlement, the court may ignore the usual prohibition on confidentiality provisions in FLSA settlements.   The executed proposed agreement submitted to chambers contains the following language:

> **WHEREAS,** Plaintiff agrees and consents to be classified and treated as an independent contractor hired by the Defendants and not as Defendants' employee for the purposes of the settlement of his claims in this Action, and
> **WHEREAS,** Plaintiff expressly reserves the right to contend that he was in fact an employee of Defendants for the purposes of said claims in the event that this Agreement is not approved or this Action is otherwise not settled . . . .
> . . . 6. **Confidentiality**.  Given that Plaintiff agrees and consents to be classified and treated as an independent contractor, as aforesaid, solely for the purposes of settling his claims, Plaintiff further consents to this Agreement remaining confidential in its entirety.
> Plaintiff acknowledges and agrees that because of Defendants' public persona the confidentiality of this Agreement is of the essence.

Thus, while the parties are still seeking the court's approval of the settlement agreement, they are attempting to stipulate for settlement purposes only that the FLSA is inapplicable to the plaintiff. The agreement as written further provides that in the event plaintiff breaches the confidentiality provision, "Defendants shall be entitled to an award of its costs spent enforcing the provision, including all reasonable attorneys' fees associated with the enforcement action, without regard to whether the Defendants can establish actual damages from Plaintiff's breach."

4

Having carefully considered the issue, I conclude that I am not empowered to permit the parties to make this sort of end-run around Cheeks. The rights protected by the FLSA (and by judicial review of FLSA settlements) are not merely private ones. In fact, "although employees, through counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement, the purposes of [the FLSA] require that it be applied *even to those who would decline its protections*." Socias v. Vornado Realty L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). The Second Circuit has long held that "an employer's self-serving label of workers as independent contractors is not controlling." Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988). Instead, courts in this circuit apply the "economic realities" test to determine whether an individual is an employee or an independent contractor for FLSA purposes. See id.; see also Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 911–12 (S.D.N.Y. 2013). I see no basis, therefore, for the court to credit what the parties have simply decided to label their relationship in this context, particularly given plaintiff's express reservation of his right to contest this issue if the settlement were not approved.

The potential for abuse by allowing an exception like this to Cheeks review extends far beyond the parties in this case. Disputes about the applicability of the FLSA to particular employees are central to scores of FLSA cases, and the independent contractor exemption has been one of the most fiercely contested issues in FLSA cases for the past few decades. Simply allowing the parties to stipulate that the statute is no longer applicable for settlement purposes would re-open the door to the kind of employer abuses in FLSA settlement negotiations that drove the Second Circuit to clarify the need for settlement review in Cheeks. See Cheeks, 796 F.3d at 206–07 ("Examining the basis on which district courts recently rejected

5

several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary . . . . [T]he FLSA is a uniquely protective statute. The burdens [of settlement review] must be balanced against the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees. As the cases described above illustrate, the need for such employee protections, even where the employees are represented by counsel, remains.") (internal citation omitted).

2. **Confidentiality and FLSA Settlements**

The Second Circuit has repeatedly noted that "the common law right of public access to judicial documents is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006); see also United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("The common law right of public access to judicial documents is said to predate the Constitution."). "Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed judicial documents . . . . Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." Lugosch, 435 F.3d at 119. The weight of the presumption is governed by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. Finally, the court must balance competing considerations including, but not limited to, the "danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id. at 120 (citations omitted.)

"Although in many—if not most—cases, a settlement agreement would not qualify as a 'judicial document,' settlement agreements in FLSA cases are different because of the requirement for judicial approval.  That is, an agreement settling an FLSA claim that is submitted for court approval is indisputably a document that is 'relevant to the performance of the judicial function and useful in the judicial process,' and thus a 'judicial document' subject to the presumption of access."  Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 337 (S.D.N.Y. 2012) (citations omitted).   Thus, "[a] court-approved FLSA settlement cannot be confidential absent a substantial showing that the need for confidentiality outweighs the presumption of public access."  Yunda v. SAFI-G, Inc., No. 15 CV 8861, 2017 WL 1608898, at *4 n.2 (S.D.N.Y. Apr. 28, 2017) (citing cases).  The presumption of public access here is only bolstered by the public policies undergirding the FLSA.  "Shielding FLSA settlement agreements from the public prevents public scrutiny that otherwise attends to judicial documents and contributes to our collective understanding and safeguarding of justice.  In particular, since the FLSA provides for judicial scrutiny of settlement agreements, these cases bear a 'private-public character,' added atop the general presumption of openness attached to judicial documents, that weighs strongly against any interest that a party may have in keeping the terms of its agreement confidential."  Garcia v. Jambox, Inc., No. 14 CV 3504, 2015 WL 2359502, at *5 (S.D.N.Y. Apr. 27, 2015) (citations omitted).

Here, the parties have offered two supposed interests they have in maintaining the confidentiality of this agreement.  First, the parties' original letter seeking the court's guidance contended that publicly filing the agreement would contradict the express terms of the parties' agreement.  (See Joint Ltr. at 2.)  Most district courts in this circuit have rejected this circular rationale.  See, e.g., Wolinsky, 900 F. Supp. 2d at 338 ("the mere fact 'that the

7

settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved FLSA settlement agreement is a judicial record, open to the public.'") (quoting Joo v. Kitchen Table, Inc., 763 F. Supp. 2d 643, 648 (S.D.N.Y. 2011)); Hens v. Clientlogic Operating Corp., No. 05 CV 381, 2010 WL 4340919, at *3 (W.D.N.Y Nov. 2, 2010) (collecting cases and "join[ing] the overwhelming majority of district courts in finding that a stipulation to seal does not outweigh the strong presumption of public access to an FLSA settlement agreement.")

Second, the parties contend that Mr. Smith's "public persona" (Agreement at § 6) as a "well-known recording artist" (Joint Ltr. at 2) is a sufficient interest to overcome the presumption of public access to FLSA settlement agreements. Again, however, the parties have cited no case law to support this argument. Generally, though, district courts in this circuit have applied the same body of law regarding the presumption of public access to cases involving other celebrity employers, without giving their notoriety any weight against the presumption of public access.[3] See, e.g., Olano v. Designs by RJR, No. 17 CV 5703, 2017 WL 4460771, at *1–2 (S.D.N.Y. 2017) (rejecting attempt to seal settlement in FLSA case against celebrity couture and bridal designer Randi Rahm).

If anything, the public's interest in Mr. Smith's career actually *increases* the presumption of public access in this case. Beyond the interest in his career, multiple news

---

[3] There are a few cases in which celebrities have been able to maintain the confidentiality of FLSA settlements, but these cases all appear to pre-date Cheeks, which was decided on August 7, 2015. Thus, the celebrities were not benefiting from any heightened interest in secrecy given their status, but rather from the lack of clarity as to whether dismissals with prejudice could be granted prior to the Second Circuit's decision in Cheeks. See, e.g., Oliver v. Maroon Entm't, Inc., No. 14 CV 10007, Dkt. No. 17 (S.D.N.Y. May 14, 2015) (granting order of dismissal with prejudice in FLSA action against recording artist Mariah Carey); O'Neill v. Mermaid Touring Inc., No. 11 CV 9128, Dkt. No. 86 (S.D.N.Y. Oct. 21, 2013) (granting stipulation of dismissal with prejudice in FLSA action against recording artist Lady Gaga).

8

organizations have reported on the existence of this lawsuit.[4]  In this context, shielding this settlement from public disclosure would convey the impression to the public that celebrities' notoriety places them above the normal application of the law.  Similarly, in non-FLSA contexts, courts have regularly concluded that "the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents."  Under Seal v. Under Seal, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (citing Lugosch, 435 F.3d at 120) (collecting cases); see also Bernsten v. O'Reilly, 17 CV 9483, 2018 WL 17615840, at *5 (S.D.N.Y. Apr. 3, 2018) (citing Under Seal in rejecting motion by former Fox News anchor Bill O'Reilly to seal two settlement and arbitration agreements filed in connection with his motion to compel arbitration and/or dismiss the complaint).

Finally, shielding the agreement from public scrutiny would "thwart[] Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace."  Wolinsky, 900 F. Supp. 2d at 339 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010)); see also Lopez v. Nights of Cabiria, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is 'particularly strong,' since '[s]ealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (citations omitted).

Finally, I note that even had this agreement been publicly filed, the court could not approve it given its confidentiality provision.  The Second Circuit has cited agreements containing strong confidentiality provisions as examples of the "potential for abuse" in FLSA

---

[4] See, e.g., John Marzulli, Busta Rhymes mocked chauffeur's age, shorted salary: $236G lawsuit, N.Y. DAILY NEWS (May 3, 2016), http://www.nydailynews.com/new-york/busta-rhymes-mocked-chauffeur-shorted-salary-236g-lawsuit-article-1.2623432.

9

settlements.  <u>Cheeks</u>, 796 F.3d at 206; <u>see also</u> <u>Nights of Cabiria</u>, 96 F. Supp. 3d at 177 (confidentiality provisions are "in strong tension with the remedial purposes of the FLSA").

## CONCLUSION

For the foregoing reasons, the parties' joint motion for settlement approval is DENIED, without prejudice.  The parties are hereby directed to resume their negotiations and submit a revised settlement agreement on the public docket for the court's review and approval.  The revised agreement may not include any impermissible confidentiality provisions.  The parties are directed to submit their revised agreement for the court's approval by June 15, 2018.  If the parties are unable to reach an agreement, the parties shall appear for a status conference on June 19, 2018 at 12:00 p.m. in Courtroom 11-B, with the expectation of proceeding to trial by the end of this year.

SO ORDERED.

Dated: Brooklyn, New York
       May 14, 2018

　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　ROBERT M. LEVY
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge